# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 2:23bk53045 |
| | ) | |
| HILLIARD HOTELS, LLC | ) | Judge Mina Nami Khorrami |
| | ) | |
| Debtor. | ) | Chapter 11 |
| | ) | |

## RSS WFCM2019-C50 – OH WG2, LLC'S EMERGENCY MOTION TO EXCUSE TURNOVER OF PROPERTY UNDER 11. U.S.C. § 543(d)(1), OR IN THE ALTERNATIVE, FOR ABSTENTION PURSUANT TO 11 U.S.C. § 305, AND TO AUTHORIZE NECESSARY EXPENDITURES BY THE RECEIVER, *NUNC PRO TUNC*, TO THE PETITION DATE AND GOING FORWARD

Now comes RSS WFCM2019-C50 – OH WG2, LLC ("**Lender**"), by and through its undersigned counsel and as a creditor and party in interest in this case, hereby files its *Emergency Motion to Excuse Turnover of Property Under 11 U.S.C. § 543(d)(1), or in the Alternative, for Abstention Pursuant to 11 U.S.C. § 305, and to Authorize Necessary Expenditures by the Receiver, Nunc Pro Tunc to the Petition Date and Going Forward* (the "**Motion**") respectfully seeking to excuse turnover under Section 543(d) of the Bankruptcy Code of Hilliard Hotels, LLC's (the "**Debtor**") real and personal property located at 1600 Hampton Court, Sidney, Ohio 45365 and commonly known as the Hampton Inn Sidney (the "**Hotel**" or "**Hampton Inn Sidney**"), which is currently under the protection, possession, control, management, and operation of Tom Moore ("**Receiver**"), Vice President of Janus Hotel Management Services, LLC ("**Janus**"), which was duly appointed by the Montgomery County, Ohio Court of Common Pleas on a limited basis on March 3, 2022 and November 10, 2022 and fully appointed on August 4,

2023.[1]  Alternatively, Lender hereby requests that this Court order abstention under Section 305(a)(1) in order to permit the Receiver to continue operating the Hotel.

Furthermore, Lender requests that the Receiver be authorized to make certain necessary expenditures, including but not limited to the payroll under Sections 543(a), (c)(1), and (2) and 363(b), consistent with the state court order appointing the Receiver *nunc pro tunc* to the petition date and going forward until further order of this Court, and management fees pursuant to Section 543(c)(2) and 503(b)(3)(E).

This Motion is supported by the Memorandum in Support of this Motion, the Declaration of the Receiver as **Exhibit A**, and the Declaration of Michael Strickland as **Exhibit B**, Asset Manager of Lender, and the records of this Court and the Montgomery County, Ohio Court of Common Pleas.

Respectfully submitted,

/s/ Tami Hart Kirby
Tami Hart Kirby, Esq. (#0078473)
Walter Reynolds, Esq. (#0022991)
Emma M. Walton, Esq. (#0100024)
Porter Wright Morris & Arthur LLP
One South Main Street, Suite 1600
Dayton, OH  45402-2028
Telephone:  (937) 449-6721
Facsimile:  (937) 449-6820
E-mail: tkirby@porterwright.com
        wreynolds@porterwright.com
        ewalton@porterwright.com

*Attorneys for Creditor RSS WFCM2019-C50 – OH WG2, LLC*

---

[1] Unless otherwise indicated, all chapter and section references in this Motion are in reference to 11 U.S.C. § 101 *et seq.* (the "**Bankruptcy Code**").  All "**Rule**" references are to the Federal Rules of Bankruptcy Procedure unless indicated otherwise.

2

## MEMORANDUM IN SUPPORT

**I.     INTRODUCTION**.

1. Lender moves this Court for two forms of complimentary relief, excuse from transfer pursuant to Section 543(d) and abstention under Section 305(a)(1), both of which are necessary to protect the creditors of Debtor. Debtor and several affiliated entities of Debtor have been embroiled in state court litigation with Lender for years. During that time, Debtor has misappropriated a significant amount of income that should have been provided to Lender and has failed to make any payments to Lender since the year 2020 that were not court ordered. Once the state-court receiver was able to take possession and control of the Hotel, he learned that the Hotel had significant deferred maintenance and repair issues, non-operational parking lot lights, and utilized undocumented immigrants to reside at the Hotel in exchange for providing services to Debtor.

2. Following presentation of all of the evidence, the state court appointed the Receiver, a highly experienced receiver, to serve as the court-appointed receiver in the Lender's pending foreclosure action. The Receiver took control over the Debtor and assets in the beginning of August, 2023. Since that time, Receiver has been actively managing and operating the Hotel utilizing operating cash advanced by the Lender. The relief requested by this Motion is necessary to preserve and continue the status quo, and to protect the creditors and other affiliated entities of Debtor. Excusing turnover and preventing the return of assets to a Debtor who has mismanaged, misappropriated, and misused those assets, clearly is in the best interest of creditors. Furthermore, economy, efficiency of administration, and resource preservation is best served by abstention by this Court.

3. In ordinary circumstances, a receiver would, upon a bankruptcy filing, turn property of the newly established bankruptcy estate over to a bankruptcy trustee or debtor in possession. Here, as a Chapter 11 bankruptcy, there is no trustee, and turnover would put Lender's collateral back into the hands of Debtor, who has misappropriated resources, and commingled funds. Due to Debtor's mismanagement of the Hotel, in this case the Receiver should remain in place.

4. This Court should excuse turnover of the Hotel pursuant to Section 543(d). As a compliment to this relief, Lender respectfully requests that this Court exercise its discretion, and suspend or dismiss these proceedings pursuant to Section 305(a). Abstention will allow the Receiver to continue operating the Hotel for the benefit of Debtor's creditors.

## II. BACKGROUND.

5. Debtor commenced this case by the filing a voluntary petition for relief under Chapter 11 of Title 11 of the Bankruptcy Code at the close of business on Friday, August 17, 2023 (the "**Petition**").

6. This Court has jurisdiction over the Motion pursuant to Section 1334 of the Bankruptcy Code. The Motion gives rise to a core proceeding under 28 U.S.C. § 157(b)(2), as to which the Court has the statutory and constitutional authority to enter a final order or judgment.

7. The statutory predicates for relief requested in this Motion are Sections 105, 305, and 543.

### A. Indebtedness Owed to Lender.

8. Lender is the owner and holder of the promissory note in the principal amount of $21,300,000.00 (the "**Loan**"), a loan agreement, mortgages, assignments of rents, which constitutes a good and valid first mortgage lien on Debtor's Hotel (collectively, the "**Loan Documents**"). Debtor is a borrower of the Loan and jointly and severally liable for the

4

indebtedness along with bankruptcy debtors Welcome Group 2, LLC and Hilliard Hotels, LLC and non-debtors Dayton Hotels 2, LLC and Elite Hospitality, LLC (collectively, "**Borrowers**").[2]

9. As of June 30, 2023, the amount owed on the Loan to Lender as of June 30, 2023 was the principal sum of $20,332,778.23, not including interest, late charges, a Yield Maintenance Fee, attorneys' fees, and other charges and obligations due pursuant to the Note and other Loan Documents, which obligations continue to accrue, subject to reduction to the extent of any remaining reserves and escrows established pursuant to the Mortgages and other Loan Documents.

10. The Hotel is valued by the Shelby County, Ohio Auditor for the year 2022 at $2,821,890.00, which includes the land and improvements.[3]

**B. State Court Foreclosure**.

11. On December 28, 2021, the Lender filed a *Complaint for Foreclosure and Other Relief* in the Montgomery County, Ohio Court of Common Pleas ("**State Court**"), which was captioned as *RSS COMM2015-PC1 – OH BL, LLC v. Welcome Group 2 LLC, et al.,* Case Number 2021 CV 05237 ("**State Court Litigation**"). At the time of the filing of the State Court Litigation, Lender filed its Motion for the Appointment of a Receiver ("**Receiver Motion**").

12. On March 3, 2022, Lender and Debtor entered into an Agreed Order Granting Plaintiff's Motion for the Appointment of a Receiver, in Part, and Other Matters ("**Initial Limited**

---

[2] Each of the Borrowers own one of the following hotels that serves as collateral for the Loan: (i) a hotel located at 2440 National Road, Zanesville, Ohio 43701 and commonly known as the Super 8 Zanesville; (ii) a hotel located at 1600 Hampton Court, Sidney, Ohio 45365 and commonly known as the Hampton Inn Sidney; (iii) a hotel located at 4850 Fursta Drive, Obetz, Ohio 43207 and commonly known as the Quality Inn & Suites South/Obetz; (iv) a hotel located at 8099 Old Yankee Street, Dayton, Ohio 45458 and commonly known as the Hotel Dayton South; and (v) a hotel located at 20 Rockridge Road, Englewood, Ohio 45322 and commonly known as the Hotel Dayton North (collectively, the "**Hotels**").

[3] Lender respectfully requests that this Court take judicial notice of this value pursuant to Evidence Rule 201 of the Federal Rules of Evidence.

**Receiver Order**"), a copy of which is attached hereto as **Exhibit C**, and is incorporated herein by this reference. Debtor did not comply with the Initial Limited Receiver Order and defaulted under its express terms by failing: (i) to fund cash management, (ii) pay monthly escrowed amounts for real estate taxes and insurance, or (iii) comply with the financial reporting requirements under the Loan Documents.

13. Consequently, after multiple delays by Borrowers, the State Court held its initial hearing on the Receiver Motion on October 17, 2022, at which time Lender presented its case for appointment of a receiver. While the second day of the hearing was scheduled for January 20, 2023, the State Court entered an Order Appointing a Limited Receiver Over all Properties ("**Limited Receiver Order**") to gather information from Debtor, a copy of which is attached hereto as **Exhibit D**, and is incorporated herein by this reference. To avoid compliance with this order, Borrowers appealed this Limited Receiver Order to the Second District Court of Appeals, and ultimately, the Ohio Supreme Court. These appeals were unsuccessful.

14. On July 31, 2023, the State Court conducted day two of the hearing on the Receiver Motion. After the presentation of the evidence, the State Court issued its Decision, Order, and Entry Granting Plaintiff's Motion to Appoint Receiver and Ordering Plaintiff to Submit Full Proposed Order ("**Receiver Order**," and together with the Initial Limited Receiver Order and Limited Receiver Order, collectively, "**Receiver Orders**"), a copy of which is attached hereto as **Exhibit E**, and is incorporated herein by this reference. Thereafter, this Court entered the Order Appointing a Receiver, a copy of which is attached hereto as **Exhibit F**, and is incorporated herein by this reference.

    **C.**    **Continual Deterioration of the Hotel During the State Court Litigation by Debtor**.

6

15. Debtor breached its payment obligations to Lender beginning on March, 2020, and each and every payment thereafter. In the State Court Litigation, Debtor engaged in several delay tactics over the last several years to avoid Lender being able to exercise its rights and remedies under Ohio law.

16. During this time, Debtor made absolutely no payments on the Loan that were not court ordered. Lender has a priority security interest in all income at the Hotel. It remains unknown what Debtor did with the income that it misappropriated for the last three years from the Hotel.

17. Furthermore, Debtor repeatedly failed to comply with the requirements of the State Court's Receiver Orders, and repeatedly disregarded the orders of the State Court.

18. Despite its contractual agreement with Lender to refrain from taking on additional debt without Lender's consent, Debtor has incurred a multitude of debt against the Hotel, some of which is secured by the same assets that secure the Lender's debt. This debt was incurred without the consent of Lender, and has resulted in liens on Debtor's assets of over a million dollars.

**D.    Receiver's Efforts to Stabilize and Rehabilitate the Hotel**.

19. When the Debtor learned that the Receiver's team would be arriving at the Hotels pursuant to the Receiver Order, the Debtor removed all personnel and property records from the Hotels. Debtor also told several employees of Borrowers to immediately leave their employment at the Hotels, and if they did so, they would receive a bonus.

20. In some circumstances, such as with this Hotel, this resulted in Hotels being left without any employees, despite all of the Hotels having paying guests staying there. Breakfast service was left open, front desks were unmanned, and cleaning carts abandoned half full of soiled

linens in the middle of the hallways. Without any staff remaining at the Hotels, this created a host of health and safety issues for the hotel guests.

21. At one of the Hotels, Borrowers told guests that the roof was collapsing in order to get them to leave the hotel and relocate to a neighboring hotel.

22. While all of the Hotels have significant "out of order" rooms, this Hotel had approximately six rooms out of order upon the Receiver taking possession out of sixty-eight rooms. The Receiver has been addressing these out of order rooms. The pool is also in need of repairs.

23. Prior to the Receiver's team arriving, Debtor also removed most of the cash from the Hotel. Debtor did not provide the Receiver with any access to reports, employees' records, financials, system passwords, or vendor platform passwords.

24. Upon arrival at the Hotels, the Receiver's team learned that several of the "employees" were actually undocumented immigrants who were living at the Hotels in exchange for providing services. The Receiver took the necessary steps to report this to the appropriate governmental authorities.

25. Additionally, approximately two weeks prior to my appointment pursuant to the Receiver Order, Debtor removed all furnishing from at least six guestrooms some of the Hotels, including the air conditioning units, leaving them completely bare.

26. Despite all of this, the Receiver has operated, managed, and maintained the Hotel consistent with the terms of the Receiver Order. The Receiver has taken the steps to employ the remaining employees at the Hotel and has hired new employees. The Receiver, through Janus, has employed staff at the Hotel, and has incurred payroll expense.

27. Since the Receiver took over, he has been handling the day to day operations at the Hotel, including the payment of operating expenses, taxes, utilities, and the like, as well as collection of revenues from the Hotel.

28. The Receiver and Lender have expended resources in negotiating and signing a new franchise agreement with the franchisor. This agreement is non-assignable to Debtor.

29. Despite the terms of the Receiver Order, Debtor has never provided any financial or operational documentation to the Receiver. This is a continuation of the Debtor's refusal to provide current financials at any time during the State Court Litigation, and even while specifically ordered to do so under the Receiver Orders.

30. The Receiver has incurred obligations for other operational items such as food, beverages, various services, utilities and insurance, and since the Receiver had no advance notice of the Chapter 11 filing, the Receiver has made certain post-petition disbursements in accordance with the Receiver Order. The Receiver continues to incur various routine, ordinary obligations for which the Receiver seeks Court approval to pay out of an abundance of cation.

31. As of the filing of this Motion, Debtor has not filed no typical "first day" motions in this matter.

**E.     The Petition and Turnover of the Hotel**.

32. Abhijit Vasani ("**Mr. Vasani**") is a guarantor of the Debtor's loan obligations to Lender, and is the owner of the managing member of the Debtor.

33. Debtor waited until the evening of September 1, 2023 (the Friday before the Labor Day holiday weekend) to file its Petition. Despite the statements on the Petition, this case is a single asset real estate case.

34. On the morning of September 2, 2023, Mr. Vasani showed up at the Hotel with a Sheriff demanding that the Receiver and his employees immediately assume management control of the Hotel from the Receiver and turnover the Hotel to Debtor.

35. The Receiver and Lender believe that it is in the best interest of the Hotel to proceed in such a way as to minimize disruption to the business at the Hotel and to maximize the Hotel's value consistent with the terms of the Receiver Order. Due to Debtor's prior mismanagement of the Hotel, the Receiver and Lender believe that it is in the best interest of this bankruptcy estate for the Receiver to continue possession and operation of the Hotel consistent with the terms of the Receiver Order unless otherwise directed by this Court.

## II. RELIEF REQUESTED.

36. By this Motion, Lender respectfully requests an Order excusing turnover of the Hotel and authorizing the Receiver's continued control and management of the Hotel under the Court's supervision. In the alternative, Lender requests that this Court order abstention under Section 305(a)(1).

## III. BASIS FOR RELIEF REQUESTED.

### A. Request to Excuse Turnover.

37. Section 543 of the Bankruptcy Code establishes the duties of a custodian when a bankruptcy proceeding is initiated. Subsection (a) prohibits the custodian from disbursing any property unless necessary to preserve such property. Subsection (b) requires a custodian to deliver any of debtor's property to the bankruptcy trustee. Accordingly, Section 543(a)-(c) generally does not permit custodians to fully administer assets after the commencement of a case. *See In re Bodenheimer, Jones Szwak & Winchell L.L.P.*, 592 F.3d 664, 674 (5th Cir. 2009).

38.     Section 543(d) was enacted "to mollify the apparently inflexible requirement of § 543(b)" and to dispense with subsection (b)'s turnover provisions in certain circumstances. *In re WPAS, Inc.*, 6 B.R. 40, 43 (Bankr. M.D.Fla. 1980).

39.     To that end, Section 543(d) provides as follows:

> (d) The bankruptcy court may, after notice and hearing, excuse compliance with subsection (a), (b) or (c) of this section, if the interests of creditors, and if the debtor is not insolvent, of equity security holders, would be better served by permitting a custodian to continue in possession, custody or control of such property.

11 U.S.C. § 543(d).

40.     As the court in *WPAS, Inc.* observed, "this Section is merely a recognition of a long recognized doctrine of abstention now expressly codified by Congress in § 305 of the Bankruptcy Code which permits the court to decline to entertain any controversy which otherwise would be within its judicial competence if to do so would be in the best interests of all parties concerned, although not necessarily the interest of the debtor." *WPAS, Inc.*, 6 B.R. at 43.

41.     A court considering whether to exercise its discretion under Section 543(d)(1) may consider several factors, including (1) whether there will be sufficient income to fund a successful reorganization; (2) whether the debtor will use the turnover property for the benefit of the creditors; (3) whether there has been mismanagement by the debtor; (4) whether or not there are avoidance issues raised with respect to property retained by a receiver, because a receiver does not possess avoiding powers for the benefit of the estate; and (5) the fact that the bankruptcy automatic stay has deactivated the state court receivership action. *In re Picacho Hills Utility Co. Inc.*, No. 11-13-10742 TL, 2013 WL 1788298 at *7, n.15 (Bankr. D.NM 2013) (*citing In re Attack Properties, LLC*, 478 B.R. 337 (Bankr. N.D.Ill. 2012); *Dill v. Dime Bank (In re Dill)*, 163 B.R. 221, 225 (Bankr. E.D.N.Y. 1994)); *see also In re WPAS, Inc.*, 6 B.R. at 42 (finding mismanagement of the

debtor's estate and refusing to disturb custodianship); s*ee In re Lizeric Realty Corp.*, 188 B.R. 499, 506-07 (Bankr. S.D.N.Y. 1995); *In re Northgate Terrace Apartments, Ltd.*, 117 B.R. 328, 332 (Bankr. S.D. Ohio 1990); *In re CCN Realty Corp.*, 19 B.R. 526, (Bankr. S.D.N.Y. 1982).

42. If the preponderance of the evidence shows that the best interests of the creditors are served by permitting Receiver to retain control of the estate, the burden shifts to Debtor to show why turnover is appropriate. *Picacho Hills*, at *7; *In re Falconridge LLC*, No. 07-bk-19200, 2007 Bankr. LEXIS (Bankr. N.D. Ill. 2007); *In re Plihal*, 97 B.R. 561, 564 (Bankr.D.Neb.1989).

43. "[E]vidence of mismanagement or questionable business practices by the Debtor [also] may negate the statutory obligation of a custodian to turnover assets to a debtor in bankruptcy." *Falconridge*, Bankr. LEXIS 3655, at *6. The "paramount and sole concern" under § 543(d) "is the interests of all creditors." Id. at *7 (*citing In re KCC-Fund V., Ltd.*, 96 B.R. 237, 239 (Bankr. W.D. Mo. 1989) (emphasis in original)). The interests of the debtor are not to be considered. *Id.* (*citing Dill*, 163 B.R. at 225). Each of these factors support a finding that excusing turnover pursuant to Section 543(d) clearly is in the best interests of creditors.

44. As described above, there can be no doubt that the Debtor (and those that controlled the Debtor) mismanaged the Hotel. Debtor has incurred over a million dollars of debt obligations against the Hotel, caused additional liens to be incurred against the Hotel, and permitted undocumented immigrants to live at the Hotel.

45. Relief under Section 543(d) is warranted because the Debtor lacks any means to adequately protect Lender, let alone the means to fund a successful reorganization. The Receiver has expeditiously and professionally operated, managed, and maintained the Hotel prior to the Petition, and the Lender has funded operations of the Hotel and provided cash to complete neglected repair and maintenance issues. The interests of creditors in this case would be disserved

by attendant costs in displacing the Receiver. *See Uno Broadcasting*, 167 B.R. 189 (excusing turnover by receiver recognizing attendant costs).

46. The Receiver is best suited to preserve value of the Hotel and should be allowed to continue possession, control, management, and operation of the Hotel.

47. It is evident from the steps by the Receiver - employment of employees and engagement of several franchisors who may provide a new license agreement for the Hotel - that the Receiver is managing the Hotel far better than the Debtor had been. *See, e.g., In re Orchards Village Invest., LLC*, 405 B.R. 341, 353 (Bank. D. Or. 2009) (excusing receiver from turnover where the operations improved significantly while in receivership over the debtor's prior management). The Receiver therefore respectfully submits that the Receiver should be permitted to continuing operating the Hotel under the provisions of the Receiver Order in order to preserve the Hotel pending further Order of this Court.

    **B.**     **Alternatively, this Court Should Exercise Abstention**.

48. As a complement to its request to excuse turnover, Lender respectfully requests that the Court abstain from hearing Debtor's Petition, and dismiss or suspend these proceedings, to permit the State Court Litigation to continue its active control and supervision over the Receiver and the full receivership estate.

49. Abstention is authorized by Section 305(a)(1) of the Bankruptcy Code, which provides:

> The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if ---
> (1) The interests of creditors and the debtor would be better served by such dismissal or suspension…

11 U.S.C. § 305(a)(1).

50. The test under Section 305(a)(1) is whether both the debtor and the creditors would be "better served" by abstention, suspension or dismissal. *In re Eastman*, 188 B.R. 621, 625 (9th Cir. BAP 1995). The decision to abstain, suspend or dismiss rests within the broad discretion of the Court. *See In re Spade*, 258 B.R. 221, 225, aff'd, 269 B.R. 225 (D.Colo. 2001) (stating that, the "broadly worded statutory language of § 305 is suggestive of Congress' intent "to delegate discretion to those obligated to act under the provision").

51. Courts have come up with various factors to consider when ruling on a Section 305(a)(1) motion. These factors include:

> (1) economy and efficiency of administration; (2) whether another forum is available to protect the interests of both parties or there is already a pending proceeding in State Court; (3) whether federal proceedings are necessary to reach a just and equitable solution; (4) whether there is an alternative means of achieving an equitable distribution of assets; (5) whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case; (6) whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and (7) the purpose for which bankruptcy jurisdiction is sought.

*In re Picacho Hills*, 2013 WL 17888298, at *9 (*citing In re Birchall*, 381 B.R. 13, 18 (Bankr. D. Mass. 2008); *In re Fax Station, Inc.*, 118 B.R. 176 (Bankr. D.R.I. 1990)). Each case, however, must be decided on its own facts. *See In re Iowa Twist*, 135 B.R. 615, 622-23 (Bankr. N.D. Iowa 1992) (*quoting In re Trina Assoc.*, 128 B.R. 858, 867 (Bankr. E.D.N.Y. 1991): "although [various] tests are useful in determining whether dismissal under § 305(a) is appropriate, courts must look to the factors of the individual cases").

52. Considering all of the facts of the matter, the Court should find that the interests of creditors would be better served by abstention, suspension or dismissal, both to allow for the continued management by the Receiver, and as a matter of comity, economy and efficiency of administration.

53. The first, second, third, fourth and sixth factors begin with considerations of economy and efficiency and, to that end, assess whether the State Court is available, less-costly and capable of providing the parties with a just and equitable resolution of their claims. "In evaluating the best interests of creditors and the debtor, efficiency and economy of administration are primary considerations." *In Re Central Mort. & Trust, Inc.*, 50 B.R. 1010, 1021 (S.D.TX 1995); *see also In re M. Egan Co.*, 24 B.R. 189, 191 (Bankr.W.D.N.Y. 1982) ("[t]he Courts have placed great emphasis in invoking 11 U.S.C. § 305(a) on the economy of administration of a case, the need for additional administrative expenses, and the duplication of effort").

54. Here, efficiency and economy is best served through abstention. The State Court Litigation has been underway for years. The Receiver is experienced and well-qualified, having served as a court-appointed receiver in numerous matters. A bankruptcy proceeding involving Debtor, which is just one of several entities that is liable under the Loan and falls within the State Court receivership estate, is unnecessary and would generate additional costs. Therefore, this Court should exercise abstention.

C. **This Court Should Approve Expenditures by the Receiver Under Sections 363(b), 543(a), *Nunc Pro Tunc* to the Petition Date**.

55. The Receiver has continued to operate the Hotel, pay payroll to its employees, pay for utilities and other related items, inasmuch as the Receiver did not receive notice of the filing until after those items were already in process. The Receiver submits that all of these expenses are in fact reasonably necessary to preserve the value of the Hotel and the business operations therein. Accordingly, the Receiver respectfully requests that this Court approve the payroll and those disbursements made since the Petition Date.

56. In addition, in the event that the Court excuses turnover for any period of time, the Receiver respectfully requests authority to pay the necessary expenses of operations which have

already been incurred by the Receiver, both prepetition and post-petition. If the Court excuses turnover, the Receiver respectfully requests approval to incur and pay those expenses, which the Receiver submits are necessary and appropriate for the operations at the Hotel. Since the revenues from operations are not sufficient to cover the Hotel's obligations, Lender has made advancements to cover these obligations for the Receiver.

57. The Receiver also requests that if turnover is excused, that the Court approve payment of management and accounting fees for the operations at the Debtor's Hotel. Pursuant to the Receiver Order, the Receiver is entitled to be paid a management fee equal to the greater of 3% of total gross revenues or $4,500.00 per month, plus an accounting fee equal to $500.00 per month. The Receiver respectfully requests that so long as it continues to operate the Hotel, that it be permitted to continue to pay those fees and reimburse those expenses.

58. Section 543(c) permits this Court, after notice and hearing, to provide for the payment of reasonable compensation for services rendered and for costs and expenses incurred by such custodian.

59. Sections 503(b)(3) and 507(a)(1) establish that custodian fees and expenses are administrative claims that have priority over other creditors. *See, e.g. In re Snergy Properties, Inc.*, 130 B.R. 700, 703 (Bank. S.D.N.Y. 1991) (stating that custodian's fees must be treated as a first priority administrative expense).

60. Finally, such payment under Section 543 applies to both pre- and post-petition services. *See Snergy*, 130 B.R. at 704 (stating that payment under Section 543 "is an exception to the general rule with respect to the allowance of compensation for exclusively post-petition activities as an administrative expense."); *citing, In re Hearth & Hinge, Inc.*, 28 B.R. 595, 597 (Bankr. S.D. Ohio 1983); *see also, In re 400 Madison Avenue Limited*, 213 B.R 888, 891 (Bankr.

16

S.D.N.Y. 1997) (directing payment for pre-petition services under Section 543); *In re Lake Region Operating Corp.*, 238 B.R. 99 (Bankr. M.D.P.A. 1999) (awarding payment for prepetition and post-petition services other than those incurred in opposing the bankruptcy).

61. As of September 1, 2023, I have incurred the following amounts for the Hampton Inn Sidney: $18,298.86 in payroll, $5,000.00 in property management fees, and $1,991.16 in expenses, for a total amount of $25,290.02 in expenses relating to the Hotel, such amounts of which are continuing to accrue.

## IV. **CONCLUSION**.

62. Lender respectfully requests that this Court enter an order: (a) granting this Motion in its entirety; (b) excusing turnover of the Hotel, or alternatively, that this Court abstain from proceeding and dismiss this action; (c) granting such other and further relief as the Court deems appropriate.

Respectfully submitted,

/s/ Tami Hart Kirby
Tami Hart Kirby, Esq. (#0078473)
Walter Reynolds, Esq. (#0022991)
Emma M. Walton, Esq. (#0100024)
Porter Wright Morris & Arthur LLP
One South Main Street, Suite 1600
Dayton, OH 45402-2028
Telephone: (937) 449-6721
Facsimile: (937) 449-6820
E-mail: tkirby@porterwright.com
wreynolds@porterwright.com
ewalton@porterwright.com

*Attorneys for Creditor RSS WFCM2019-C50 – OH WG2, LLC*

18

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing was filed electronically on this 6th day of September, 2023, which will be served on the following ECF participants, electronically through the Court's ECF system at the email address registered with the Court:

| | |
|---|---|
| Denis E. Blasius, Esq.<br>140 N. Main Street, Suite A<br>Springboro, Ohio 45066<br>*Attorney for Debtor-in-Possession* | Darlene E. Fierle, Esq.<br>140 N. Main Street, Suite A<br>Springboro, Ohio 45066<br>*Attorney for Debtor-in-Possession* |

Assistant United States Trustee
Office of the US Trustee
170 North High Street, Suite 200
Columbus, Ohio 43215

and on the following by ordinary U.S. Mail addressed to:

Hilliard Hotels, LLC
5955 E. Dublin Granville Road
New Albany, Ohio 43054
*Debtor*

/s/ Tami Hart Kirby
*Attorneys for Creditor RSS WFCM2019-C50 – OH WG2, LLC*

**NOTICE OF FILING OF
RSS WFCM2019-C50 – OH WG2, LLC'S EMERGENCY MOTION TO EXCUSE TURNOVER OF PROPERTY UNDER 11. U.S.C. § 543(d)(1), OR IN THE ALTERNATIVE, FOR ABSTENTION PURSUANT TO 11 U.S.C. § 305, AND TO AUTHORIZE NECESSARY EXPENDITURES BY THE RECEIVER, *NUNC PRO TUNC*, TO THE PETITION DATE AND GOING FORWARD**

RSS WFCM2019-C50 – OH WG2, LLC, a creditor in this case, has filed papers with the Court to excuse turnover of property under 11 U.S.C. § 543(d)(1), or in the alternative, for abstention pursuant to 11 U.S.C. § 305, and to authorize necessary expenditures by the receiver, *nunc pro tunc*, to the petition date and going forward.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. If you do not have an attorney, you may wish to consult one**.

If you do not want the Court to grant the relief sought in the Motion, then on or before twenty-one (21) days from the date listed on the following Certificate of Service, you or your attorney must file with the Court a written response explaining your position by mailing your response by ordinary U.S. Mail to U.S. Bankruptcy Court for the Southern District of Ohio, 170 N. High Street, Columbus, Ohio 43215, OR your attorney must file a response using the Court's ECF System.

The Court must receive your response on or before the above date.

You must also send a response either by 1) the Court's ECF System; or by 2) ordinary U.S. Mail to Tami Hart Kirby, Esq., Porter Wright Morris & Arthur LLP, One S. Main Street, Suite 1600, Dayton, Ohio 45402.

If you or your attorney do not take these steps, the Court may decide that you do not oppose the relief sought in the Motion and may enter an order granting that relief without further hearing or notice.

23107805